Argued and submitted June 10, affirmed December 22, 1980,
reconsideration denied March 12,
petition for review denied April 7, 1981 (290 Or 727)

In the Matter of the Compensation of
Phyllis J. Saxton, Claimant.

SAXTON,
*Petitioner,*

*v.*

LAMB-WESTON et al,
*Respondents.*

(No. 78-8202, CA 16306)

621 P2d 619

Robert K. Udziela, Portland, argued the cause for petitioner. With him on the brief were Pozzi, Wilson, Atchison, Kahn & O'Leary, and Jeffrey S. Mutnick, Portland.

Elizabeth K. Reeve, Portland, argued the cause for respondent Lamb-Weston. With her on the brief were Schwabe, Williamson, Wyatt, Moore & Roberts, and Roger A. Luedtke, Portland

Before Schwab, Chief Judge, and Thornton and Richardson, Judges.

RICHARDSON, J.

## RICHARDSON, J.

In this workers' compensation case claimant sought compensation for an occupational disease. The referee, in an opinion affirmed and adopted by the Workers' Compensation Board (Board), held that claimant's condition was medically stationary and not compensable. Claimant contends that she is entitled to further temporary benefits because her condition is not medically stationary and, in the alternative, if medically stationary, that she is entitled to a permanent total disability award.

Claimant commenced working for employer in February, 1973. She worked in the frozen food division as a frozen food inspector. The job included taking unmarketable frozen french fries from a conveyor belt. Her hands were exposed to cold and she developed painful symptomatology in both hands which ultimately appeared in both feet and other joints in her body. She left work and filed a claim for workers' compensation benefits in May, 1973. Employer accepted the claim and paid temporary total disability benefits up to the time of the hearing in 1979.

Various disease processes have been considered to explain claimant's symptoms. Claimant's treating physician, Dr. Bittner, diagnosed claimant as having cryoglobulinemia, which he described as "merely the top of the iceberg which will eventually lead us to a more definitive diagnosis in the field of an auto-immune disorder."

Claimant was examined by Dr. Porter, a specialist in vascular disorders. He diagnosed her condition as Raynaud's Syndrome. All of the medical evidence indicates there is presently no basis for a more definitive diagnosis of claimant's disease and that there is no known treatment. Claimant's condition is being monitored but she is not receiving active medical care. Claimant's treating physician expressed the hope that he may be able to better diagnose her condition sometime in the future and at that time prescribe treatment.

We conclude that claimant's condition is medically stationary. There is presently no known treatment for her condition. She is presently unable to return to work and

although her condition may deteriorate, it is stationary respecting her prospects of returning to work. *See Pratt v. SAIF,* 29 Or App 255, 562 P2d 1242 (1977).

The next issue is whether claimant is entitled to permanent total disability benefits. Employer argues in support of the Board's order that claimant's condition was not caused by her employment. Employer contends that while claimant may have had a temporary aggravation of a preexisting condition due to her employment, she is not entitled to an award of permanent disability. Claimant argues that she is entitled to permanent total disability benefits if her condition is medically stationary and that employer is estopped from denying compensability of her condition because it accepted the original claim when initially filed.

■ The Supreme Court in *Frasure v. Agripac,* 290 Or 99, 619 P2d 274 (1980), recently stated that under ORS 656.262(7),[1] the acceptance of a claim does not prevent an employer from subsequently denying compensability, so long as the denial is not based on the defense of lack of notice.[2] Here, employer's denial of claimant's right to permanent disability benefits is based on the contention that her condition was not caused by her employment. The denial is proper notwithstanding employer's acceptance of the original claim and payment of temporary benefits for approximately two years. *Frasure v. Agripac, supra.*

With regard to the issue of the claim's compensability, the referee concluded that claimant's condition was not causally related to her employment. The Board affirmed and adopted the referee's conclusion. Claimant argues that her condition has been established as compensable by the employer's earlier acceptance of the initial claim and

---

[1] ORS 656.262(7) provides:

"Merely paying or providing compensation shall not be considered acceptance of a claim or an admission of liability, nor shall mere acceptance of such compensation be considered a waiver of the right to question the amount thereof."

[2] ORS 656.265(5) provides:

"The issue of failure to give notice must be raised at the first hearing on a claim for compensation in respect to the injury or death."

that the only issue is the extent to which she is disabled. Since we conclude that employer can raise the defense of noncompensability, we must determine *de novo* the compensability of claimant's condition.

■     Claimant's use of the term "condition" is somewhat confusing. If, as it appears from her brief, the term relates to her underlying disease, we conclude as did the referee and the Board that it is not compensable. Both Dr. Porter and Dr. Bittner agree that claimant's disease preexisted her employment. There is no convincing evidence to the contrary. If, however, the term "condition" refers to the onset of symptomatology due to the underlying disease we must examine her claim in light of the test set forth in *Weller v. Union Carbide,* 288 Or 27, 602 P2d 259 (1979). In this respect, both Dr. Porter and Dr. Bittner agree that claimant's disease became symptomatic during her employment.

■■     To be entitled to compensation for her symptomatology, claimant must establish by a preponderance of the evidence that (1) her work activity and conditions (2) caused a worsening of her underlying disease (3) resulting in an increase in pain (4) to the extent that it produced disability or required medical services. *Weller v. Union Carbide, supra.* In this case, there is no evidence to establish element (2), a worsening of the underlying disease, or element (4), that her employment produced any permanent disability.[3] Claimant has therefore failed to establish the compensability of her condition.

Affirmed.

---

[3] Employer's position is that claimant has failed to establish any permanent disability. Under *Weller,* even a temporary disability is compensable if the essential elements are established. Here, there is no claim by employer that claimant failed to establish any temporary disability, so that issue is not before us. Claimant sought an award for permanent disability.